UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-262 (ADM/ECW)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FOWZI ABDINASIR ELMI,

    Defendant.

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Justin A. Wesley, Assistant United States Attorney, respectfully submits this reply to Elmi's pretrial motions. (DCD 51-62).

## I. BACKGROUND

The ATF, DEA and local state agencies have been investigating the distribution of counterfeit oxycodone pills containing fentanyl (M-Box pills). These pills have been causing many overdoses in the state, and many people have died. Elmi is a member of a violent street gang, the 1627 Boys, that is involved in the distribution of these pills.

### a. June 1, 2019 Traffic Stop

On June 1, 2019, the Minneapolis Police Department received a tip that there was a gun and fentanyl pills in a particular vehicle. Officers located the vehicle and conducted a traffic stop. Elmi, who was a juvenile at the time, was a passenger in the vehicle, which

was also occupied by his brother and others. Police recovered 351 M-Box pills containing fentanyl, a large sum of cash, and a stolen Glock 9mm pistol.[1] Elmi's DNA was linked to a baggie containing fentanyl pills (and his brother's DNA was identified on a second bag).

### b. January 21, 2020

On January 21, 2020, Elmi was a passenger in a vehicle with two other men in Oklahoma on their way back to Minnesota from Arizona. After developing reasonable suspicion and obtaining the driver's consent, a dog-sniff was conducted on the vehicle. The dog positively alerted to the presence of narcotics. Officers recovered approximately 2100 M-Box pills containing fentanyl in five baggies. Fowzi was charged in Oklahoma but released from custody, and he returned to Minnesota.

### c. September 15, 2020

On September 15, 2020, Minneapolis Police Officers responded to a car crash and found three individuals—Elmi, the same juvenile with his DNA on the stolen Glock from the June 1, 2019 incident, and a third individual—walking around the crashed vehicle and arguing. They did not appear to be physically injured, but they were acting strangely. Officers saw what appeared to be a gun (later revealed to be a BB gun) in the vehicle. During a search of Elmi, officers found $479 in cash and 170 M-Box pills. During a post-

---

[1] The gun was found in the tire storage area in the rear of the vehicle, which was a Toyota Rav 4. Forensic testing linked the stolen Glock to a St. Louis Park shooting between the 1627 Boys and rival gang, the Somali Outlaws (SOL) on May 26, 2019, where at least four individuals were struck by gunfire and treated at the hospital. DNA analysis linked the firearm to another juvenile occupant of the vehicle, although the firearm was recovered in an area accessible by all of the occupants.

Miranda interview, Elmi admitted that the pills contained fentanyl. He initially claimed they were for personal use, but then admitted to purchasing them wholesale for $15 per pill. He then admitted to selling the pills to support his habit, and that the pills typically sold for $30-$35 apiece.

## II. Elmi's Motions to Suppress. (DCD 59-62).

Elmi filed several motions that will require testimony. The government will file its notice of intent to call witnesses at the motions hearing.

### a. Elmi's Motion to Suppress Evidence from June 1, 2019.

Elmi has filed a motion to suppress evidence from the June 1, 2019 traffic stop, arguing that officers lacked "the requisite cause to believe he had committed a crime or that the vehicle contained evidence of a crime." (DCD 60). The search and seizure was justified as a protective weapons search under *Michigan v. Long,* a probable cause search under the automobile exception, and ultimately as a search incident to arrest. Minneapolis Police Officers had information from a confidential reliable informant that 1627 Boys gang members were in a black Toyota Rav-4 with identified license plates driving around northeast Minneapolis. The CRI reported seeing Elmi's brother with a gun, and the brother was selling fentanyl pills. The CRI identified Elmi's brother as being inside the vehicle. The government intends on calling law enforcement witnesses to meet its burden in establishing exceptions to the warrant requirement and will file a notice of intent to call witnesses.

b. **Elmi's Motion to Suppress Evidence from January 21, 2020.**

Elmi has filed a motion to suppress evidence from the January 21, 2020 traffic stop on the grounds that law enforcement lacked the "requisite cause to believe he had committed a crime or that the vehicle contained evidence of a crime. (DCD 59). The search and seizure was justified under the automobile exception to the warrant requirement. The vehicle was stopped for speeding, and during the routine traffic stop, the officer developed reasonable suspicion to conduct a dog sniff (and also obtained the driver's consent). *See Illinois v. Caballes*, 543 U.S. 405 (2005); *see also Rodriguez v. U.S.*, 575 U.S. 348 (2015). After the trained drug-sniffing dog alerted to the presence of narcotics, law enforcement had probable cause to search the vehicle under the automobile exception. The government will file a notice of intent to call witnesses regarding this motion.

c. **Elmi's Motion to Suppress Evidence from September 15, 2020.**

Elmi filed a motion to suppress evidence from the September 15, 2020 incident arguing officers lacked "the requisite cause to believe he committed a crime or that the vehicle contained evidence of a crime." (DCD 61). The search and seizure was justified as a protective weapons search under *Terry v. Ohio*, or as a search incident to arrest. Officers responded to a crashed vehicle where Elmi was arguing with two other individuals outside of the vehicle and was acting strangely. During the interaction, officers saw what they thought was a gun. Upon seeing the weapon, officers immediately detained and searched the three males. Elmi had 170 fentanyl pills on his person. Officers later discovered the

gun was a BB gun. The government will be filing a notice of intent to call witnesses at the motions hearing.

### d. Elmi's Motion to Suppress Statements from all three incidents.

Elmi filed a general motion to suppress all statements related to the three incidents and any others he "may have made," claiming Elmi did not validly waive his Miranda rights "and/or" was too intoxicated to waive his rights.[2] In addition to the actual recordings or signed forms where Elmi was read his rights and voluntarily spoke with law enforcement, the government will also elicit testimony from the officers who took the statements because the evidence does not support the assertion that Elmi was too intoxicated to waive his rights.

### III.   Elmi's Discovery Motions. (DCD 51-58).

Elmi filed several general discovery motions. These motions appear to be of the boilerplate variety and do not relate to any ongoing disputes regarding the government's discovery. Accordingly, the government does not intend to present any witness testimony regarding these motions during the motions hearing.

### a. Elmi's Motion for Disclosure of Brady Materials (DCD 51).

Elmi has moved for disclosure of exculpatory, favorable, and impeaching information under *Brady v. Maryland*, 373 U.S. 83 (1963), and any information relating to

---

[2] Elmi also claims the government has not provided an audio recording of the Oklahoma interview. The government provided a file to counsel on December 9, 2020. Counsel can play the video, but the audio portion does not work. The government will work with counsel to fix this audio issue.

witnesses' bias under *Giglio v. United States*, 405 U.S. 150 (2017). (DCD 51). The government understands, has substantially complied with, and will continue to comply with, its *Brady* and *Giglio* obligations to produce exculpatory/impeachment evidence to the defense. If any additional such evidence comes to the government's attention, it will be turned over promptly and sufficiently before trial to enable the defendant to make effective use of it.

### b. Elmi's Motion to Compel 404(b) Evidence (DCD 52).

Elmi has moved for an order requiring the government to disclose 404(b) evidence related to Elmi and to "identify the witnesses through whom such evidence will be presented at trial." (DCD 52). The government acknowledges its obligation to give notice under Rule 404(b).

Under the rule, the Government is required to "provide reasonable notice in advance of trial or during trial if the court excuses pretrial notice on good cause shown." Fed. R. Evid. 404(b). *See* Fed. R. Evid. 404(b) advisory committee's notes, 1991 Amendments ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request will depend largely on the circumstances on each case."). The Government proposes to make its notification 14 calendar days prior to trial. Under the circumstances of this case, 14 days is a reasonable notice period.

The Government also requests that any order be strictly drawn to require no more than what is encompassed by Rule 404(b). Specifically, Rule 404(b) does not encompass acts that are "intrinsic" to the charged offense. Fed. R. Evid. 404

advisory committee's notes, 1991 Amendments. If conduct of a defendant is an "intrinsic" part of any of the charged offense but could otherwise be considered a "bad act," then Rule 404(b) does not contemplate that notice of such evidence be given. The distinction is an important one, as the defense may claim that the Government must give notice of every "bad act" it intends to introduce, which is not so. *United States v. Adediran*, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence).

  c. **Elmi's Motion for Discovery (DCD 53).**

The government has made its Rule 16 disclosures and will continue to supplement its disclosures as any additional materials come into its possession. Elmi has not identified any evidence or materials, or category of evidence or materials, to which he is entitled that has not already been produced by the government. For its part, the government does not believe there is any.[3]

---

[3] Elmi's discovery motion includes a request for items he is not entitled to under Rule 16. (DCD 53 at 2 ¶ 4) (requesting "arguably relevant" evidence "which the government does not intend to use…at the trial of this case.") Absent a particularized request which also details the need for such evidence, the government has no obligation (or ability) to respond to this generic demand. Elmi also requests statements made by witnesses who the government does not intend to call at trial. Elmi is not entitled to such evidence unless it is exculpatory. Again, the government has and will fulfill its discovery obligations, including those under *Brady/Giglio*. (DCD 53 at 3 ¶¶ 10, 11, 16, 22).

   d.  **Motion for Discovery of Expert (DCD 54).**

The government does not object to Elmi's motion requiring the government to provide notice of any expert witnesses it intends to use at trial so long as the defendant agrees to provide reciprocal notice pursuant to the same schedule. (*See* DCD 50 ¶ A.3, Govt. Mt. for Discovery). The government proposes that the parties provide notices and summaries related to any expert witnesses no later than 14 days before trial.

There is no defined timing requirement included in Rule 16(a)(1)(G). *See* Fed. R. Crim. P. 16 advisory committee's note, 1993 Amendments. The advisory committee's notes provide that, "although no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." *Id.* In the present case, the Government's proposal to disclose expert witness materials 14 days in advance of trial is reasonable and allows ample time for the parties to prepare for the testimony. *See United States v. Finn*, 919 F. Supp. 1305, 1316 n.7 (D. Minn. 1995) (ordering Government to make Rule 16(a)(1)(G) disclosures as opinions become available and no later than seven days before trial and rejecting defendant's request that such disclosures be made at least 45 days prior to trial).

   e.  **Elmi's Motion for Disclosure of Grand Jury Transcripts (DCD 55).**

Elmi filed a motion for disclosure of grand jury transcripts of witnesses the government intends to call to testify at the motions hearing and/or trial in this case. Such transcripts would constitute *Jencks* material. However, there are no grand jury transcripts for the witnesses the government intends to introduce at the motions hearing. For trial, the

government understands its discovery obligations and agrees to disclose *Jencks* material three business days prior to the scheduled testimony. However, the government objects to being ordered to do so.

### f. Elmi's Motion to Compel Disclosure of Informant (DCD 56).

Elmi demands the disclosure of the identity of any informants used in this investigation, as well as co-defendants, and alleged accomplices, and to make them available to be interviewed. (DCD 56). While law enforcement did have a tip from a confidential informant before the June 1, 2019 traffic stop, that person is covered by the informant privilege. *See United States v. Roviaro*, 353 U.S. 53, 59 (1957); *McCray v. Illinois*, 386 U.S. 300, 310 (1967). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59. "In determining whether disclosure is required, the threshold issue is whether the informant is a material witness." *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001). But to overcome the informant privilege, a defendant must provide "more than speculation that the evidence an informant may provide will be material." *Id*. (quoting *United States v. Grisham,* 748 F.2d 460, 463-64 (8th Cir. 1984)). Instead, the defendant "bears the burden of demonstrating that disclosure is material to the outcome of his case; in other words, that disclosure is vital to ensure a fair trial." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001). "A trial court abuses its discretion if it orders

9

disclosure absent a showing of materiality." *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). The defendant has failed to meet this exacting burden.

In circumstances where the informant is an active participant in the conduct charged, the informant's identity is "almost always" material. *United States v. Sanchez*, 429 F.3d 753, 756 (8th Cir. 2005). On the other hand, if the informant is a mere "tipster," there is generally a strong presumption against disclosure. *United States v. Lindsey*, 284 F.3d 874, 877 (8th Cir. 2002).

Here the defendant has provided no basis for this Court to conclude that the disclosure of the informant in this investigation would be material to the defense. Because the defendant has been charged by Indictment based solely upon the observations and seizures of the police, and the expected testimony of its witnesses, the informant qualifies as a "mere tipster" under the well-established law. The government does not intend on calling this informant as a witness.

The Eighth Circuit has not required the government to disclose the identity of an informant under facts similar to those present in this case. *See, e.g., United States v. Hollis*, 245 F.3d 671 (8th Cir. 2001); *United States v. Harrington*, 951 F.2d 876 (8th Cir. 1991); *United States v. Bourbon*, 819 F.2d 856 (8th Cir. 1987); *United States v. Pajari*, 715 F.2d 1378 (8th Cir. 1983); *United States v. Skramstad*, 649 F.2d 1259 (8th Cir. 1981). For example, in *Hollis*, an informant provided information that he had seen methamphetamine in a residence within the previous 10 days. This information led to a search warrant, the seizure of marijuana and methamphetamine, and charges against *Hollis* for possession with

intent to distribute these drugs. The defense later produced a witness who claimed that she accompanied the informant to the residence and that neither of them had seen the drugs. Holding that disclosure was not required, the Court concluded that the informant was a "tipster" and stated:

> The confidential informant in this case did not participate in the offense charged against Hollis, and the government stated that it did not intend to call the informant as a witness at trial. There was, accordingly, no obligation on the part of the government to reveal the informant's identity.

*Hollis*, 245 F.3d at 674.

Similarly, in *Harrington*, the police used an informant to make controlled buys of crack cocaine from occupants of an apartment. Based upon this information, the police obtained a search warrant and seized crack cocaine. As a result, various occupants of the apartment were charged with drug-related charges relating to the possession of the cocaine base. The Court found that disclosure was not "vital to a fair trial because the informant's testimony would not further any legitimate interests of the defendants." The Court went on to find that the informant was a "tipster" who alerted police that the defendants were offering crack cocaine for sale. The Court noted that even though the informant had engaged in drug transactions and observed cocaine in the apartment the day before the search, he "neither witnessed nor participated in the search of the apartment." Importantly, the Court relied upon the government's assertion that it did not intend to call the informant to testify. *Harrington*, 951 F.2d at 878.

Here, Elmi has offered nothing to support his motion to compel the Government to disclose the identity of the informant or to produce that individual for a pretrial interview.

The Government respectfully represents that the informant used by law enforcement in this case qualifies as a "mere tipster" as outlined in well-established Eighth Circuit law. As such, disclosure is not warranted under *Roviaro* and its progeny. For these reasons, Elmi's motion should be denied.

To the extent any other informants, co-defendants, or accomplices will be called as a witness at trial, the United States will provide Jencks Act and *Giglio* material as to those witnesses no later than three days before trial.

### g. Elmi's Motion regarding Rough Notes (DCD 57).

Elmi requests an Order requiring law enforcement to preserve rough notes taken as part of the investigation. (DCD 57). It is well established in the Eighth Circuit that the Government is not required by law to preserve rough notes taken by agents during an investigation. *See* United States v. Grunewald, 987 F.2d 531, 535 (8th Cir. 1993). In this District, the United States does not normally object to pretrial motions which seek the agents to retain their rough notes. Accordingly, the United States does not object to this motion to the extent that any such rough notes still exist.

### h. Elmi's Motion for early Jencks Act Material. (DCD 58).

Elmi also moves for early Jencks Act material. (DCD 58) (requesting such material two weeks prior to trial). The Eighth Circuit has repeatedly held that the government cannot be compelled to produce Jencks Act material until after a witness has testified at trial on direct examination. *See, e.g.*, *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992). The Defendant's motion should therefore be denied. Notwithstanding this, the government

will provide the Defendant with all Jencks Act material no later than three business days prior to trial. However, the government objects to the Court ordering the government to do so.

## IV.   Conclusion

Based on the foregoing, the Government respectfully requests that the Court deny Elmi's motions to suppress, and grant his motions for discovery and disclosure as provided herein.

Dated: February 12, 2021                    Respectfully Submitted,

                              ERICA H. MacDONALD
                              United States Attorney

                              /s/ *Justin A. Wesley*
                              BY:  JUSTIN A. WESLEY
                              Assistant U.S. Attorney
                              Attorney ID No. 0389189